## LEONARD *v.* AMERICAN LIFE & ANNUITY COMPANY.

1. A mutual life insurance company prepared a form of contract for sale by its agent to certain persons taking insurance, which named the insured as "local inspector," and stated that he agreed, upon written request, to furnish information on certain subjects, which he might be able to obtain without expense to himself. It recited that, in consideration thereof, the company agreed to create a fund equal to $1.25 for each $1,000 of insurance in force in Georgia, and also twenty-five cents for each $1,000 of insurance in force in the United States, Georgia excepted, which should be written in each and every year for ten years after the first day of September, 1911, and all renewals thereof for twenty years succeeding that date. The total fund was to be divided into one thousand equal shares, and each "local inspector" who should pay to the company the annual premium on $5,000 of insurance and perform the other duties required by the contract would be entitled to one share therein. Until contracts to the number of one thousand should be sold, the amount to be paid to each share would be proportioned to the number issued. *Held,* that this was a special discriminatory contract prohibited by the twentieth section of the act of August 19, 1912 (Acts 1912, p. 129).

2. The prohibition contained in the act mentioned against the selling or offering for sale of special contracts, or any other form of policy or contract whereby any discrimination is allowed to any particular person, is not, as a whole, violative of the clause contained in the State constitution, or that in the fourteenth amendment of the Federal constitution, which declares that no person shall be deprived of life, liberty, or property without due process of law.

(*a*) This is true although prior to the passage of the act an insurance company may have appointed an agent in a certain territory for a period of two years, with authority to canvass for insurance and to secure and tender to the company such special contracts.

3. The twentieth section of the act of 1912 is not unconstitutional as being violative of the clause of the constitution of the State which declares that laws of a general nature shall have uniform operation throughout the State, and no special law shall be enacted in any case for which provision has been made by an existing general law; and that no general law affecting private rights shall be varied in any particular case by special legislation.

4. The section of the act mentioned is not invalid on the ground that it contravenes the clause of the constitution of the State which declares that protection to person and property is the paramount duty of government, and shall be impartial and complete.

5. After the twentieth section of the act had prohibited contracting for rebates and the sale or offering for sale of special discriminatory insurance contracts, a clause which declared that, until January 1st, 1915, "the provisions of this section shall not apply to any life insurance company now in process of formation under commission from the Secretary of State, which will do a non-participating business only," was an arbitrary discrimination in favor of the company or companies thus sought to be temporarily exempted, and was violative of the clause

of the fourteenth amendment of the constitution of the United States, which declares that no State shall deny to any person within its jurisdiction the equal protection of the laws.

6. The unconstitutional and invalid provision is not so essential and inseparable a part of the general legislative purpose that the entire twentieth section of the act must fall with it. But such clause can be stricken from the section, and the remainder be left to stand.

7. There was no error in refusing the injunction prayed, on any of the grounds on which it was sought.

JANUARY 18, 1913.

Petition for injunction. Before Judge Bell. Fulton superior court. September 13, 1912.

*Payne & Jones,* for plaintiff.

*Smith & Hastings* and *Walter McElreath,* for defendant.

LUMPKIN, J. F. W. Leonard filed his equitable petition against the American Life and Annuity Company, seeking to enjoin the defendant "from breaching" its contract with him and refusing to accept applications for certain special insurance contracts, of the character described in the first division of the opinion. He alleged that the damages would be irreparable. No point was made as to the necessity for equitable relief, but the case was made to turn on two questions: (1) Did the contract which the plaintiff claimed the right to sell fall within the prohibition contained in the twentieth section of the act of August 19, 1912 (Acts 1912, pp. 119, 129)? (2) If so, is that section unconstitutional on any of the grounds of attack made upon it, and which will be found in the opinion? The presiding judge refused an injunction, and the plaintiff excepted.

1. The twentieth section of the act of August 19, 1912 (Acts 1912, pp. 119, 129), regulating insurance, prohibits contracting for rebates of premiums and the sale of "any special contract, board contract, or any other form of policy or contract whereby any discrimination in any form or character is allowed to any particular person or persons; provided, however, that until the first day of January, 1915, the provisions of this section shall not apply to any life insurance company now in the process of formation under commission from the Secretary of State, which will do a non-participating business only." The contract which the plaintiff contends that he has a right to sell clearly falls within this prohibition. By its terms a fund is to be provided for the benefit of the holders of contracts of this character, which is not for the benefit of other

policyholders in this company. It makes a discrimination. Nominally the policyholder who takes this special contract is called a "local inspector," and it is recited that he agrees to furnish to the company certain information and suggestions, on written request. But he receives the benefit of a division of the fund provided, regardless of whether he renders any service or not, and irrespective of the extent thereof. The plaintiff does not claim that the company comes under the exemption contained in that section.

2. The twentieth section of the act of 1912 is attacked as unconstitutional on several grounds. It is argued that the plaintiff had a contract with the defendant to act as its agent for a term of two years, and was authorized to sell these special contracts, and that the act was violative of the clauses of the State and Federal constitutions which declare that no person shall be deprived of life, liberty, or property without due process of law. It was not alleged that the contract between the plaintiff and the company expressly provided that he should have the right to sell these contracts. But whether it did or not, this contention as to the entire section is unsound. If it were otherwise, the police power of the State could be practically destroyed by the simple device of making a contract to do a certain thing while a bill was on its passage, the purpose of which was to prohibit the doing of such thing. Regulation of insurance business is unquestionably within the power of the legislature. *Atlantic Coast Line R. Co.* v. *State,* 135 *Ga.* 545 (69 S. E. 725, 32 L. R. A. (N. S.) 20); *Washington* v. *Atlantic Coast Line R. Co.,* 136 *Ga.* 638 (71 S. E 1066, 38 L. R. A. (N. S.) 86); *State* v. *W. & A. R. Co.,* 138 *Ga.* 835 (76 S. E. 577); Louisville & Nashville R. Co. v. Motley, 219 U. S. 467 (31 Sup. Ct. 265, 55 L. ed. 297); Orient Insurance Co. v. Daggs, 172 U. S. 557 (19 Sup. Ct. 281, 43 L. ed. 552); Chicago Life Ins. Co. v. Needles, 113 U. S. 574 (5 Sup. Ct. 681, 28 L. ed. 1084).

3. The section of the act under consideration is further attacked on the ground that it violates the clause of the State constitution which declares that laws of a general nature shall have uniform operation throughout the State, and no special law shall be enacted in any case for which provision has been made by an existing general law; and that no general law affecting private rights shall be varied in any particular case by special legislation. Civil Code, § 6391. The act is not subject to this objection. It is not a case

of a pre-existing general.law, sought to be varied by a special law. All of the provisions are in the same act. Whether they are subject to attack on the ground that they seek to make an arbitrary discrimination is another question.

4. There is also no merit in the contention that the section of the act violates the provision of the State constitution which declares that protection to person and property is the paramount duty of government and shall be impartial and complete. Civil Code, § 6359.

5. The twentieth section of the act is still further attacked on the ground that it declares that, until January 1, 1915, its provisions "shall not apply to any life insurance company now in the process of formation under commission from the Secretary of State, which will do a non-participating business only." It is argued that this clause constitutes discriminatory class legislation, and violates the provision of the fourteenth amendment of the constitution of the United States, which declares that no State shall deny to any person within its jurisdiction the equal protection of the laws, and that this renders the entire section void. The legislature has power to make reasonable classifications of subjects of legislation, and to deal with such classes separately. But it has-no power. to make arbitrary discriminations in favor of certain persons or corporations, as against others in like circumstances. Barbier v. Connolly, 113 U. S. 27 (5 Sup. Ct. 357, 28 L. ed. 923); Connolly v. Union Sewer Pipe Co., 184 U. S. 540, 560 (22 Sup. Ct. 431, 46 L. ed. 679). The Supreme Court of the United States has said that classification "must always rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed, and can never be made arbitrarily and without such basis," and that "arbitrary selection can never be justified by calling it classification. The equal protection demanded by the Fourteenth Amendment forbids this." Gulf, Colorado & Santa Fé Ry. v. Ellis, 165 U. S. 150, 155, 160, 165 (17 Sup. Ct. 255, 41 L. ed. 666).

Is the exemption here sought to be granted a legitimate classification or an arbitrary discrimination? It does not put in one class companies which will do a participating business and in another companies which will do a non-participating business, and treat the members of each class alike. But, having divided compa-

nies according to the character of the business to be done by them, it takes the class of companies which will do a non-participating business, and seeks to relieve certain members of that class for a time from the operation of a prohibition which had already been made, covering the whole class. Do they form a legitimate subclass? On what basis? It is not that in their organization or character they will differ in any material respect from other companies doing a non-participating business, nor that the business to be done by them will be different from that done by others of like nature, but the discrimination rests solely on the ground that, at the time when the act became a law, they were in process of formation. The great beneficial purposes of the act were in the direction of uniformity of operation under like circumstances, and protection of policyholders and the public against harmful practices. One of the things which was declared to be wrong and prohibited was contracting to give rebates; another was the offering or selling of these special contracts providing for advantages and discriminations in favor of some of those insured against others. How will this be any less an evil if indulged in by a company which was in process of formation on August 19, 1912, the date when the act was approved? If a company completed its formation a day before the act was passed, the contracting for rebates and the selling of these special contracts by it would be prohibited. If a company began its formation on the day after the act was passed, such rebates and sales would be forbidden. But if it was in process of formation on that day, it could for two years indulge in contracting for rebates and discriminations forbidden to others doing exactly the same class of business and desiring to sell the same sort of contracts.

It was suggested that companies then in process of formation may be presumed to have been organized with a view to the existing law, and to have planned their finances accordingly. But is this any the less true of companies organized before the act? On the contrary, they completed their organization and began business without notice of any probable change in the law, while a company which had not completed its formation when the law was on its passage and when it was enacted, before entering the field of active insurance business, had notice and an opportunity to adjust itself to the law. If there were any difference in the status of the two in this respect, it would not be in favor of the beneficiaries of the

proviso. In fact there is no real classification at all, but an effort to give to such companies a business advantage denied to others of like kind, based on no difference in character or business, but only on being in process of formation. Such an effort to discriminate is just what the constitution forbids.

The "infant industry" suggestion, as a basis for giving an undue advantage to one company, or a few companies, does not impress us. It is too familiar as the argument of individuals or corporations which desire special privileges and unjust discriminations to be granted in their favor.

6. Is this unconstitutional provision such an integral and essential part of the twentieth section of the act that the entire section must fall with it, or can this void provision be stricken and leave the rest to stand? If a statute is in part valid, and in part invalid, and the objectionable portion is so connected with the general scheme of the statute that it can not be stricken out and effect be given to the legislative intent, the statute must fall. But although a statute can not be sustained in whole, the courts will uphold it in part, if it is reasonably certain that to do so will correspond with the main purpose which the legislature sought to accomplish by its enactment, and if, after striking the invalid part, enough remains to accomplish that purpose. *Lee* v. *Tucker,* 130 *Ga.* 43, 50 (60 S. E. 164) ; *Pearson* v. *Bass,* 132 *Ga.* 117 (63 S. E. 798) ; Noel *v.* People, 187 Ill. 587 (79 Am. St. R. 239, 58 N. E. 616, 52 L. R. A. 287) ; National Cotton Oil Co. *v.* Texas, 197 U. S. 115 (25 Sup. Ct. 379, 49 L. ed. 689).

The act here under consideration comprehends a general legislative scheme looking toward standardization and uniformity under like circumstances, and the protection of policyholders and the public. The twentieth section has a general purpose to prevent rebates and "special" or "board" contracts, or other discriminatory insurance contracts. The proviso does not exempt permanently any company from this legislative purpose. It undertakes for about two years and a half to suspend the application of the statute to certain special companies in process of formation, but after that even they are to fall within the legislative scheme. Of necessity the number of companies in that situation on the date when the law was approved was small. Indeed only one or two companies answering the description have been brought to our attention by

counsel; and the attorney for one of them asked leave to file a brief. We thus have a general and consistent legislative purpose, with only an effort to temporarily exempt one company, or a very few companies, from one'of its provisions. It is not contended that this should invalidate the entire act; nor do we think it should destroy the entire twentieth section. The unconstitutional clause can be stricken out and the remainder be left to stand unaffected, and as carrying out the general legislative intent.

In this respect the case before us differs from that of Connolly v. Union Sewer Pipe Co., supra. There the general provisions of the act applied to all persons, firms, corporations, 'or associations combining their skill or capital for certain specified purposes tending toward restriction of trade or controlling of prices. One section declared that the statute should not apply to agriculturists or live-stock dealers in respect of their products or stock in hand. It was held that this was an unconstitutional discrimination. Then arose the question whether the entire act was void or only the attempted exemption. On this subject Mr. Justice Harlan said (p. 564) : "It can not be said that the exemption made by the ninth section of the statute was of slight consequence, as affecting the general public interested in domestic trade and entitled to be protected against combinations formed to control prices for their own benefit; for it can not be disputed that agricultural products and live stock in Illinois constitute a large part of the wealth of the State." That case arose in the Federal court. This arose in the State court, a special function of which is to construe State statutes. We construe the one before us to carry out the legislative purpose, with the small and separable unconstitutional feature omitted.

7. The presiding judge did not err in denying the injunction on any of the grounds urged by the plaintiff in error. The reference to the case of Standard Oil Co. v. United States, 221 U. S. 1, 69, 106 (31 Sup. Ct. 502, 55 L. ed. 619, 34 L. R. A. (N. S.) 834, 25 Ann. Cas. 734)—see also United States v. American Tobacco Co., 221 U. S. 106 (31 Sup. Ct. 632, 55 L. ed. 663)—arising under the act of Congress of July 14, 1890, c. 708, called the Sherman act (26 Stat. 289, U. S. Comp. St. 2354), requires no discussion. Those cases have no bearing on this. Of course the prohibition contained in the twentieth section of the act did not prevent charging different rates of premiums for persons' of different ages, or the like. *Judgment affirmed. All the Justices concur.*